**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ASD SPECIALTY HEALTHCARE INC.,
d/b/a ASD HEALTHCARE,

      Plaintiff,

          v.

NEW LIFE HOME CARE INC. and
GREGORY MALIA,

      Defendants.

CIVIL ACTION NO. 3:11-CV-068

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are Defendant Gregory Malia's Motion to Dismiss the Amended Complaint and Plaintiff ASD Specialty Healthcare Inc.'s Motion to Dismiss Counterclaims Filed by New Life Home Care Inc. Mr. Malia's motion will be denied because ASD may plead inconsistent claims and has sufficiently alleged facts supporting corporate veil-piercing and fiduciary duty theories. But because ASD has not sufficiently served Mr. Malia, it must perfect service within twenty-one days. ASD's motion will be granted in part because New Life did not plead its fraud claims with particularity and the statute of limitations has run on its claims that ASD fraudulently billed it for goods it did not receive. The motion will be denied in part, however, because New Life may plead inconsistent claims and assert a cause of action for accounting.

### I. Background

**A. ASD's Amended Complaint**

The facts as alleged in ASD's Amended Complaint are as follows:

1

Defendant New Life Home Care is a company that provides pharmaceutical and related services to assist individuals with bleeding disorders such as hemophilia. In August of 2005 and 2006, New Life entered into an open account with Plaintiff ASD Healthcare, a pharmaceutical supplier, for the purchase of antihemophilic drugs. To establish the account, New Life signed business applications with ASD, agreeing to pay all debts, accounts, and invoices.

New Life's controlling shareholder is Defendant Gregory Malia. He controlled New Life's finances and made all significant decisions for the company. Mr. Malia has treated New Life as his alter ego, using New Life funds to help pay for his lavish and opulent lifestyle, even while New Life was insolvent or nearing insolvency. Mr. Malia paid himself approximately $300,000 a year as New Life's president and CEO, in addition to $80,000 for pastoral care he provides to New Life's patients. He charged personal expenses to his corporate credit card, including $8,000 for the monthly rent on his Manhattan apartment and the payments on his luxury cars. Mr. Malia also issued approximately $300,000 worth of checks to his attorney, a personal friend, without any invoices describing services rendered by the attorney. Further, he paid the rent on New Life's operating space to an entity of which he was the sole owner.

In early 2010, ASD requested that New Life make payment for the pharmaceuticals it had purchased. New Life failed to make any payments. In April 2010, New Life signed a promissory note in the amount of $1,119,759.65 with ASD. New Life represented that it would make payments under the note and timely pay for any future pharmaceutical purchases. At that time, New Life also executed a security agreement granting ASD a security interest in New Life's personal property. ASD

2

perfected the security interest on June 7, 2010 by filing a UCC-1 financing statement with the Secretary of State of the Commonwealth of Pennsylvania.

New Life failed to make payments to ASD and is now in default of its obligations under the business applications, note, and security agreement.  As of January 7, 2011, the aggregate principal balance due to ASD from New Life equaled $2,558,586.83 plus interest of eighteen percent per annum on each outstanding invoice.

ASD instituted this action against New Life and Mr. Malia on January 10, 2011. After the complaint was dismissed for jurisdictional defects, ASD filed an amended complaint on January 19, 2011.  The complaint contains seven counts: (1) breach of the business applications; (2) breach of the note; (3) unjust enrichment; (4) replevin; (5) breach of fiduciary duty; (6) conversion; and (7) piercing the corporate veil.  Mr. Malia moved to dismiss the complaint on July 15, 2011. The motion is fully briefed and ripe for disposition.

## B. New Life's Counterclaims

The facts as alleged in New Life's answer are as follows:

ASD provides pharmaceuticals to New Life.  The price of these pharmaceuticals constantly fluctuates based on changing contractual relationships and government standards.

In July of 2009, New Life reviewed the copies of all purchase orders placed with ASD and the corresponding invoices for the year 2009.  Based on its review, New Life determined that ASD had been overbilling it.  Specifically, the review showed that ASD had billed New Life for goods that it did not receive and that ASD had inflated the prices on goods that it did provide to New Life.

3

New Life filed its answer on July 15, 2011.  The answer asserts four counterclaims: (1) fraudulent concealment; (2) unjust enrichment; (3) fraud, misrepresentation, and deceit; and (4) accounting.  New Life seeks damages in the amount of $650,000.  ASD moved to dismiss the counterclaims on July 29, 2011.  The motion has been fully briefed and is ripe for disposition.

## II.  Discussion

### A. Legal Standard on a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  The pleading standard of Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," but "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1959 (2009) (quoting *Twombly*, 550 U.S. at 555).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

Thus, when determining the sufficiency of a complaint, a court must undertake a three-part inquiry.  *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  The

4

inquiry involves: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.*

## B. Dismissal of ASD's Amended Complaint

### 1. Sufficiency of Service of Process

Mr. Malia first moves to dismiss the amended complaint for insufficient service of process.  A court may only render judgment where it has personal jurisdiction over the parties, and personal jurisdiction is obtained by properly serving a summons and complaint upon a party.  *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700-01 (3d Cir. 1991).  If a party has not been properly served within 120 days after the complaint is filed, Federal Rule of Civil Procedure 4(m) states that a court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." "[T]he party asserting the validity of service bears the burden of proof on that issue." *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993) (citing 4A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1083 (2d ed. 1987)).

ASD fails to meet its burden of showing that it properly served Mr. Malia within 120 days of the filing of the complaint.  ASD argues that it served Mr. Malia in accordance with Federal Rule of Civil Procedure 4(e)(1) and Pennsylvania Rule of Civil Procedure 403.  Rule 4(e)(1) allows for service following the law of the state where the district court is located.  Fed. R. Civ. P. 4(e)(1).  Rule 403 states that service by mail is proper where there is "a receipt signed by the defendant or his authorized agent."  Pa.

R. Civ. P. 403.  Here, ASD submitted documentation that the summons and complaint were delivered to 75 Wall Street in New York, New York and signed for by a person named "Colon."  But Mr. Malia argues that 75 Wall Street is not his address and that Colon is not his authorized agent, and ASD has not presented any evidence to the contrary.  Because ASD has not shown that the receipt was signed by Mr. Malia's authorized agent, service was improper under Rule 403.  *See, e.g.*, *Lampe*, 952 F.2d at 701; *Ignition Media Grp., LLC v. Pantel Sys., Inc.*, No. 07-0439, 2007 WL 2728662, at *1 (E.D. Pa. Sept. 14, 2007); *McKinnis v. Hartford Life*, 217 F.R.D. 359, 361 (E.D. Pa. 2003).  ASD argues that service was proper because Mr. Malia had actual notice of the suit, as evidenced by his communicating with opposing counsel and filing motions.  The Third Circuit has emphasized, however, that notice is necessary but not sufficient to effect service.  *Grand Entm't Grp.*, 988 F.2d at 492 ("[N]otice cannot by itself validate an otherwise defective service.").  ASD also argues that a similar form of service was accepted by the Pennsylvania Superior Court in *Aquilino v. Philadelphia Catholic Archdiocese*, 884 A.2d 1269, 1283 (Pa. Super. 2005), but that case is inapposite as it dealt with in-person service under Rule 402 and not service by mail under Rule 403.  Therefore, ASD has failed to properly serve Mr. Malia within the 120 days required under Rule 4(m).

Although service was improper, Mr. Malia's motion to dismiss will be denied.  Dismissal of a complaint for insufficient service "is inappropriate when there exists a reasonable prospect that service may yet be obtained."  *Umbehauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992).  Under Rule 4(m), a court has the discretion to extend time for service.  Fed. R. Civ. P. 4(m).  Because Mr. Malia had notice of the suit and there is a

reasonable prospect of proper service, ASD will have twenty-one days to perfect service on Mr. Malia.

### 2. Piercing the Corporate Veil

Mr. Malia also moves to dismiss on the grounds that ASD has not sufficiently alleged facts that would support a corporate veil-piercing theory.  ASD's complaint does not allege that Mr. Malia personally breached any contracts, was unjustly enriched, or took or interfered with another's property.  Instead, ASD asserts in its complaint that the Court should pierce the corporate veil in order to hold Mr. Malia liable for the New LIfe's actions.  Piercing the corporate veil "is an equitable remedy whereby a court disregards the existence of the corporation to make the corporation's individual principals and their personal assets liable for the debts of the corporation."  *Trustees of Nat'l Elevator Indus. Pension, Health Benefit and Educ. Funds v. Lutyk*, 332 F.3d 188, 192 (3d Cir. 2003).  The remedy is used "when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime."  *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484-85 (3d Cir. 2001) (quoting *Zubik v. Zubik*, 384 F.2d 267, 272 (3d Cir. 1967)).

The Third Circuit has set out an eight-factor test to determine whether it is appropriate to pierce the corporate veil.  *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484-85 (3d Cir. 2001).  The factors for consideration are: "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder."  *Id.*  The

7

test is not rigid and not every factor need be present in order to justify veil-piercing. *Lutyk*, 332 F.3d at 194.  "However, the act of piercing the corporate veil is an extraordinary remedy and will only be employed in exceptional circumstances." *Best v. Romec, Inc.*, No. 3:10-CV-2335, 2011 WL 3206828, at *3 (Jul. 28, 2011) (citing *Village at Camelback Property Owners Ass'n Inc. v. Carr*, 371 Pa. Super. 452, 461 (1988)).

Here, ASD has adequately established that it may be appropriate to pierce the corporate veil and hold Mr. Malia liable for New Life's debts.  Although it does not satisfy every factor of the veil-piercing test, ASD's amended complaint asserts that Mr. Malia siphons funds from New Life for his own personal use, that he has total control over the decisions of New Life, and that New Life is insolvent.  These allegations are sufficient to withstand a motion to dismiss.

### 3. Pleading in the Alternative

Mr. Malia's motion to dismiss also argues that ASD has asserted contradictory claims.  In particular, he argues that ASD cannot assert a breach of contract claim alongside tort causes of action like conversion and replevin; he further asserts that an action for unjust enrichment cannot stand with a breach of contract claim.  Mr. Malia is correct that these claims may be conflicting.  "Under Pennsylvania law, tort claims allegedly committed in the course of carrying out a contract are dismissible if the 'gist' of them sounds in contract instead of tort." *Berger & Montague, P.C. v. Scott & Scott, LLC*, 153 F. Supp. 2d 750, 753 (E.D. Pa. 2001).  Thus, if the alleged contracts here are the gist of the action, ASD cannot proceed on its tort claims.  Additionally, the doctrine of unjust enrichment does not apply "when the relationship between the parties is founded on a written agreement or express contract." *Schott v. Westinghouse Electric Corp.*, 436

8

Pa. 279, 290 (1969).  Thus, if it is determined that ASD had a contract with New Life, then its unjust enrichment claim cannot stand.

Plaintiffs may, however, plead inconsistent claims or alternative statements of a claim under Federal Rule of Civil Procedure 8(d).  Based on that rule, courts have rejected motions to dismiss on grounds of inconsistency where plaintiffs alleged both breach of contract and conversion, *Berger & Montague*, 153 F. Supp. 2d at 754, breach of contract and unjust enrichment, *18 KT.TV, LLC v. Entest Biomedical, Inc.*, No. 3:11-CV-244, 2011 WL 5374515, at *6 (M.D. Pa. Nov. 7, 2011), and breach of contract and replevin, *Gov't Guarantee Fund v. Hyatt Corp.*, 166 F.R.D. 321, 324 (D.V.I. 1996).  Mr. Malia may revisit his objections at the summary judgment stage, but his motion to dismiss based on contradictory claims will be denied.

### 4. Breach of Fiduciary Duty

Mr. Malia's motion to dismiss the breach of fiduciary duty claim will be denied. Mr. Malia argues that he did not owe any fiduciary duty to ASD.  Generally, directors of a corporation do not owe a fiduciary duty to corporate creditors, but there is an exception where a corporation becomes insolvent.  *In re Insulfoams, Inc.*, 184 B.R. 694, 703-04 (Bankr. W.D. Pa. 1995); *see also In re Lemington Home for the Aged*, 659 F.3d 282, 290 (3d Cir. 2011).  Mr. Malia objects that New Life is not insolvent, but on a motion to dismiss, a court must accept as true all allegations in the complaint.  ASD alleges in its complaint that New Life was insolvent and that ASD was its creditor, and therefore it has sufficiently pleaded a breach of fiduciary duty claim.

9

**C. Dismissal of New Life's Counterclaims**

    **1. Fraud Claims**

    ASD first argues that New Life's counterclaims for fraudulent concealment and fraud, misrepresentation, and deceit must be dismissed.  Specifically, ASD asserts that these claims are precluded by the gist of the action doctrine, fall beyond the statute of limitations, and fail to meet the pleading standards under Federal Rule of Civil Procedure 9(b).

    Dismissal based on the gist of the action doctrine is inappropriate.  As noted above, the gist of the action doctrine "precludes a party from raising tort claims where the essence of the claim actually lies in a contract that governs the parties' relationship." *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 718 (Pa. Super. 2005).  New Life, however, claims that there was no valid contract between it and ASD, creating a disputed issue of law that cannot be determined at the motion to dismiss stage.  Further, just as ASD pleaded inconsistent claims in its complaint, New Life may assert tort counterclaims alongside contract counterclaims.  *See* Fed. R. Civ. P. 8(d).  Based on this, it is inappropriate to dismiss the claims.

    Turning next to the statute of limitations issue, a review of the complaint demonstrates that New Life's fraud counterclaims are time barred.  A court may dismiss a claim under Rule12(b)(6) where a statute of limitations bar is "apparent on the face of the complaint." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (citing *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).  Pennsylvania law provides a two-year statute of limitations for any fraud claims.  42 Pa. C.S.A. § 5524(7).  Thus, New Life's claims will be time barred if the alleged fraud occurred more than two years

prior to July 15, 2011, when New Life filed its answer.  New Life's complaint states that it

discovered in July of 2009 during an invoice review that past 2009 billings by ASD had

been fraudulent.  The date of New Life's discovery suggests that the alleged fraud must

have occurred prior to July 2009–and therefore outside of the limitations period.  New

Life attached several sample invoices to support its counterclaim; each one of these was

dated prior to July 2009.  It is possible, of course, that New Life reviewed its invoices at

the end of July, and that review showed an instance of fraud stemming out of a billing

that occurred within the limitations period.  But New Life did not allege in its complaint

any specific instance of fraud occurring between July 15 and 31, and thus its fraud

claims will be dismissed.  It may, however, amend its claim to specifically assert any

timely fraud claims.

        The untimeliness of New Life's fraud claims can be partially, but not entirely,

cured by its assertion of fraudulent concealment.    "Fraudulent concealment is an

equitable doctrine [that] is read into every federal statute of limitations."  *Mathews v.*

*Kidder, Peabody & Co.*, 260 F.3d 239, 256 (3d Cir. 2001) (internal quotations omitted)

(quoting *Davis v. Grusemeyer*, 966 F.2d 617, 624 (3d Cir. 1993)).  Under the doctrine,

acts of fraudulent concealment by a defendant will toll a statute of limitations "until the

time of discovery or the date when with reasonable diligence one would have been led to

discovery."  *Urland v. Merrell-Dow Pharm, Inc.*, 822 F.2d 1268 (3d Cir. 1987).  Here,

New Life argues that ASD concealed two facts: (1) that it billed New Life for goods it did

not provide to New Life; and (2) that it inflated prices for goods it did send to New Life.

The fraudulent concealment doctrine cannot apply to the first alleged concealment,

because if New Life had done its due diligence, it would have known at the time of billing

that ASD had charged it for goods it did not receive.  Due diligence might not have

revealed price inflation, however, and therefore any claims of fraud based on price inflation might fall under the doctrine of fraudulent concealment.  Although ASD may submit evidence at summary judgment that New Life could have learned of the alleged price inflation fraud with reasonable diligence, New Life has successfully pleaded that the statute of limitations for the price inflation fraud claims was tolled under the doctrine of fraudulent concealment.

New Life's claims still must be dismissed, however, for failure to meet the heightened pleading standards of Rule 9(b).  Under that rule, a party alleging fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The particularity requirement may be satisfied "if the complaint describes the circumstances of the alleged fraud with 'precise allegations of date, time, or place' *or* by using some means of 'injecting precision and some measure of substantiation into their allegations of fraud.'" *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296, F.3d 164, 173 n.10 (3d Cir. 2002) (quoting *Naporano Iron & Metal Co. v. Amer. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999)).  The purpose of the heightened pleading standard is to "place defendants on notice of the precise misconduct with which they are charged, and to safeguard against spurious charges of immoral and fraudulent behavior."  *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).  Here, New Life's counterclaim alleges that ASD inflated prices and billed for goods not received between January and July of 2009. It does not specify whether every single invoice during that period was fraudulent, or whether only some were.  Further, it does not make clear which billings involved price inflation as opposed to goods not received.  Therefore, New Life did not satisfy the pleading standard under 9(b).  Its fraud claims will be dismissed, but it will be granted

leave to amend in order to plead its price inflation fraud allegations with more particularity.

### 2. Unjust Enrichment

ASD's motion to dismiss New Life's unjust enrichment counterclaim will be denied.  ASD argues, much as Mr. Malia did, that a party may not recover under a theory of unjust enrichment claim where a contract governed the parties' relationship. *See Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 619-20 (E.D. Pa. 2003).  As noted above in the discussion of the gist of the argument doctrine, New Life disputes the existence of the contract and further is permitted to plead in the alternative under Rule 8(d).  Thus, New Life may proceed with its unjust enrichment claim.

### 3. Accounting

ASD's motion to dismiss New Life's accounting claim will be denied.  ASD asserts that accounting is an equitable remedy and not a cause of action, citing *ClubCom, Inc. v. Captive Media, Inc.*, No. 02:07-cv-1462, 2009 WL 249446, at *14 (W.D. Pa. Jan. 31, 2009).  Several other Pennsylvania district courts, however, have allowed plaintiffs to assert accounting as a separate cause of action where a valid contract exists.  *See, e.g.*, *Mendicino v. Lotus Orient Corp.*, No. Civ. A. 10-1867, 2010 WL 4104580, at *10 (E.D. Pa. Oct. 19, 2010) (citing *Alpart v. Gen. Land Partners, Inc.*, 574 F. Supp. 491, 508 (E.D. Pa. 2008); *Berger & Montague, P.C. v. Scott & Scott, LLC*, 153 F. Supp. 2d 750, 754 (E.D. Pa. 2001)); *Bernardo v. Continental Serv. Grp., Inc.*, No. Civ. A. 10-1388, 2010 WL 2649942, at *3 (E.D. Pa. Jun. 30, 2010) (citing *Binary Semantics Ltd. v. Minitab, Inc.*, No. Civ. A. No. 07-1750, 2008 WL 763575, at *13 (E.D. Pa. Mar. 20, 2008)).  Based on this precedent, New Life may proceed with its accounting claim.

## **CONCLUSION**

For the reasons stated above, Mr. Malia's motion to dismiss will be denied and New Life's motion to dismiss will be granted in part and denied in part.  An appropriate order follows.

 November 29, 2011                           /s/ A. Richard Caputo
Date                                           A. Richard Caputo
                                                United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ASD SPECIALTY HEALTHCARE
INC., d/b/a ASD HEALTHCARE,

    Plaintiff,

      v.

NEW LIFE HOME CARE INC. and
GREGORY MALIA,

    Defendants.

CIVIL ACTION NO. 3:11-CV-068

(JUDGE CAPUTO)

**ORDER**

    **NOW**, this ___29th___ day of November, 2011, **IT IS HEREBY ORDERED** that:

    1. Defendant Gregory Malia's motion to dismiss the amended complaint is **DENIED.**

    2. Plaintiff has failed to properly serve Defendant Gregory Malia.  Plaintiff must perfect service within **twenty-one (21) days** of this order.

    3. Plaintiff's motion to dismiss Defendant New Life Home Care Inc.'s counterclaims is **GRANTED in part and DENIED in part.**  Counts I and III alleging fraudulent concealment and fraud, misrepresentation and deceit are **DISMISSED without prejudice.**  Defendant is granted leave to amend in order to specify timely fraud allegations and/or allege with particularity any price inflation fraud claims.  Defendant has **twenty-one (21) days** to amend or the claims will be dismissed with prejudice.

                   /s/ A. Richard Caputo
                   A. Richard Caputo
                   United States District Judge