**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ASD SPECIALTY HEALTHCARE, INC. d/b/a ASD HEALTHCARE** : : | |
| **Plaintiff** : | **CIVIL ACTION NO. 3:11-0068** |
| **v** : : | **(JUDGE MANNION)** |
| **NEW LIFE HOME CARE, INC. and GREGORY MALIA** : | |
| **Defendants** : | |

**MEMORANDUM**[1]

Presently before the court is the defendants' Motion for Reconsideration of the court's entry of judgment in favor of the plaintiff's, pursuant to Fed. R. Civ. Pro. Rule 60(b)(1) and (b)(6). (Doc. No. 78, 79).

**I.    BACKGROUND**

The plaintiff, ASD Specialty Healthcare, Inc. ("ASD"), filed its initial complaint on January 10, 2011. (Doc. No. 1). The complaint alleged that defendant New Life Home Care, Inc. ("New Life") failed to pay for $2,558,586.83 in pharmaceuticals ordered from the plaintiff. Specifically, ASD brought claims for breach of the business applications, breach of the note,

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

unjust enrichment, replevin, breach of fiduciary duty, and conversion. Moreover, the plaintiff alleges that New Life's controlling shareholder, Defendant Gregory Malia, has misappropriated corporate funds that would be used to pay the debt. The plaintiff contends the court should pierce the corporate veil and hold Mr. Malia personally liable for each count. The Hon. A. Richard Caputo, then assigned to the case, found that the complaint failed to properly alleged diversity between the parties and dismissed the complaint, but offered the plaintiff leave to amend. (Doc. No. 5). ASD filed a amended complaint on January 19, 2011. (Doc. No. 6).

ASD returned proof of service indicating that New Life and Mr. Malia were each properly served on January 24, 2011 and January 21, 2011, respectively.² (Docs. No. 7, 8). On February 17, 2011, with no responsive pleading filed by either defendant, the plaintiff requested entry of default against each defendant, (Docs. No. 10, 11), and default was entered on February 18, 2011. (Docs. No. 12, 13). On February 22, 2011, the defendants filed a motion to vacate the entry of default, (Doc. No. 14), and a brief in support. (Doc. No. 15). The defendants' brief attacked the sufficiency of ASD's complaint as well as alleging defenses that the defendants would raise if the court were to set aside the default and allow them to file a responsive

---

² As discussed below however, Judge Caputo would later find service on Mr. Malia was not effective. (Doc. No. 40).

pleading. The plaintiff filed a brief in opposition. (Doc. No. 16). The defendants subsequently filed a supplemental brief in support, (Doc. No. 18), and a brief in reply. (Doc. No. 19). On July 5, 2011, Judge Caputo granted the defendants' motion to vacate the default and ordered the defendant to file a responsive pleading within 10 days. (Doc. No. 28).

On July 15, 2011, Mr. Malia filed a motion to dismiss for lack of jurisdiction and for failure to state a cause of action, (Doc. No. 29), as well as a brief in support. (Doc. No. 30).[3] In his motion to dismiss, Defendant Malia argued that service by mail was ineffective because the delivery was not signed for by himself or his agent. (Doc. No. 29). In addition, he alleged that ASD's claims for breach of contract, replevin, breach of fiduciary duty and conversion were insufficient with respect to Defendant Malia and that ASD had failed to properly plead a cause of action to pierce the corporate veil and hold him personally liable. On July 29, 2011, ASD filed a brief in opposition. (Doc. No. 32).

Also on July 15, 2011, New Life filed an answer to the amended complaint which contained counterclaims and thirteen affirmative defenses. (Doc. No. 31). New Life brought counterclaims alleging fraudulent concealment, unjust enrichment, demanding an accounting, and fraud,

---

[3] On August 12, 2011, Mr. Malia filed a subsequent brief in support of his motion to dismiss. (Doc. No. 35). The brief was virtually identical to the prior brief in support filed with the motion.

3

misrepresentation, and deceit by ASD, who New Life alleged had been over billing New Life since 2000. On July 29, 2011, ASD filed a motion to dismiss the counterclaims, (Doc. No. 33), and a brief in support. (Doc. No. 34). On August 12, 2011, New Life filed a brief in opposition. (Doc. No. 36).

While awaiting the court's ruling on the motions to dismiss, counsel for the defendants moved to withdraw from the case citing "irrevocable differences with regard to how to proceed in this matter." (Doc. No. 37 at 1). Over ASD's opposition, (Doc. No. 38), the court granted the motion to withdraw on October 21, 2011, provided that the defendants secured replacement counsel within 45 days. (Doc. No. 39).

On November 29, 2011, Judge Caputo issued a memorandum and order regarding the pending motions to dismiss. (Doc. No. 40). Mr. Malia's motion to dismiss for failure to state a claim was denied, however, the court found that service had been improper and directed ASD to perfect service within 21 days of the order. ASD's motion to dismiss New Life's counterclaims was granted in part and denied in part. Judge Caputo dismissed the claims of fraudulent concealment and fraud, misrepresentation and deceit without prejudice, affording New Life an opportunity to file a more specific pleading. New Life's counterclaims of unjust enrichment and for accounting were allowed to proceed.

On December 6, 2011, ASD moved for a default judgment after no

replacement counsel had entered an appearance on behalf of the defendants as required by Judge Caputo's October 21, 2011 order. (Doc. No. 41). On December 7, 2011, ASD filed a brief in support. (Doc. No. 42). On December 15, 2011, Attorney Scott Matthew Amori entered his appearance on behalf of the defendants. After being granted an extension of time to file amended counterclaims, the defendants filed their amended answer on January 20, 2012. (Doc. No. 49). On February 1, 2012, Judge Caputo denied the motion for default citing the renewed active defense by the defendants. (Docs. No. 51, 52). On February 3, 2012, ASD filed an answer to the amended counterclaims. (Doc. No. 53).

On May 18, 2012, ASD filed a motion to compel discovery, (Doc. No. 54), and a brief in support. (Doc. No. 55).[4] The motion sought responses to discovery requests as well as the deposition of Mr. Malia. As the result of a telephone conference regarding the dispute held on September 25, 2012, the court entered an order directing the defendants to supply the outstanding discovery and for Mr. Malia to submit to a deposition before the end of October, 2012. (Doc. No. 62).

On November 2, 2012, ASD contacted the court alleging that the defendants had still not provided the outstanding discovery or arranged for

---

[4] The parties subsequently consented to the jurisdiction of a Magistrate Judge and the case was assigned to the undersigned while the undersigned was sitting as a Magistrate Judge. (Doc. No. 60).

Mr. Malia to be deposed. Pursuant to a telephone conference held on November 8, 2012, the court entered another order directing the defendants to provide discovery. (Doc. No. 67). The court specifically instructed the defendants to provide responses to the outstanding discovery requests by November 16, 2012 and that Mr. Malia should be present for a deposition on the agreed upon date of December 14, 2012.

On November 26, 2012, ASD sent a letter to the court, (Doc. No. 68), reporting that the defendants had failed to provide the requested discovery by the court's November 16, 2012, deadline. The same day, the court entered an order directing the defendants' counsel to respond to that letter in writing and instructing plaintiff's counsel to submit to the court a petition for attorney's fees and costs related to his attempts to compel discovery along with other sanctions he wished the court to consider. (Doc. No. 69). The defendants did not reply to this letter or order.

On December 7, 2012, ASD filed a motion for attorney's fees, costs and for sanctions, (Doc. No. 70), together with a brief in support. (Doc. No. 71). ASD sought $8,085 in attorney's fees related to the discovery dispute. In addition, ASD asked that the court enter a default judgment in the amount of $2,558,586.83, dismiss all of the defendants' counterclaims with prejudice, and schedule a hearing to determine all other attorney's fees, costs and interest related to this litigation which may be due to ASD under Counts I and

6

II of its amended complaint. Again, the defendants did not respond to that motion.

On December 10, 2012, defendants' counsel contacted plaintiff's counsel regarding the deposition of Defendant Malia, set by court order to occur on December 14, 2012. (Doc. No. 67). Defendant Malia now claims he wanted to limit his deposition testimony through a motion for a protective order pursuant to Fed. R. Civ. Pro. 26(c). (Doc. No. 79). He alleges that the plaintiff did not concur in this motion and it was not brought to the courts attention, until this present motion to vacate judgment. (Doc. No. 79). Defendant Malia did not appear for the court ordered deposition on December 14, 2012.

On April 10, 2013, the court granted in part and denied in part plaintiff's motion for sanctions, entering judgment in favor of plaintiff's in the amount of $2,558,586.83, dismissing the defendants' counterclaims with prejudice, and awarding $8,085.00 in attorney's fees and costs related to the discovery dispute. (Doc. No. 77). The instant motion to vacate judgment was filed on April 19, 2013, (Doc. No. 79), and a brief was filed in support thereof on April 24, 2013. (Doc. No. 80). The plaintiff filed a response and brief in opposition on May 1, 2013. (Doc. No. 81, 82).

## II. DISCUSSION

Federal Rule of Civil Procedure 60 allows the court to "relieve a party or its legal representative from final judgment, order, or proceedings" for several different reasons. The defendants rely upon Rule 60(b)(1), allowing relief for "mistake, inadvertence, surprise, or excusable neglect" and Rule 60(b)(6), allowing relief for "any other reason that justifies relief." The thrust of the defendant's argument is that he was pursuing a "middle ground acceptable to all parties and the court to move this matter forward" in regard to the discovery disputes when he was essentially blind sided by the court's entry of judgment. (Doc. No. 80). Moreover, he contends that holding Defendant Malia personally responsible under the judgment is "contrary to equity and justice," "where it has not been demonstrated beyond only the barest accusations that he is even an appropriate party." (Id.).

### A. Rule 60(b)(1)

We turn first to whether relief should be granted under Rule 60(b)(1). District Courts have great discretion over Rule 60 motions and in determining whether counsel has shown excusable neglect. *Martinez v. City of Chicago, 499 F.3d 721, 727 (7th Cir. 2007)*. The court must review an entry of default judgment under Rule 60(b)(1) to determine: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; (3) whether the default was the result of the defendant's culpable conduct." *Budget Blinds,*

*Inc. v. White*, 536 F.3d 244, 256 (3d Cir. 2008). Even when evaluating these factors, "the entry of a default judgment for a marginal failure to comply with the time requirements imposed by the Rules . . . must be distinguished from dismissals or other sanctions imposed by the district courts for willful violations of the court rules and orders, contumacious conduct or intentional delay." *Gross v. Stereo Component Systems, Inc.*, 700 F.2d 120, 124 (3d Cir. 1983). The court must also evaluate the circumstances to determine whether there was "excusable neglect." *In re Cendant Corp. PRIDES Litigation*, 235 F.3d 176, 182 (3d Cir. 2000). The factors emphasized by the Third Circuit and the Supreme Court in determining excusable neglect include: (1) the danger of prejudice, (2) the length of delay and its potential impact on judicial proceedings, (3) the reasons for the dely and whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *Id.* (citing *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993)).

The court must first determine the threshold issue of whether the defendants have established a meritorious defense. *U.S. v. $55,518,05 in U.S. Currency*, 728 F.2d 192, 195 (3d. Cir. 1984). In the answer to the amended complaint, defendants lay out thirteen affirmative defenses. (Doc. No. 49). Although some of the defenses are mere recitation of legal standards and only partial defenses, several would be a total defense. As such, this

9

threshold issue must be decided in favor of the defendants.

Turning to the remaining two factors, neither the plaintiffs, nor the defendants, touch on how the court should measure these factors. The court looks to the "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment to support a finding of prejudice." *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 657 (3d Cir. 1982). The defendants' failure to respond is viewed "in the context of its failure over an extended period of time to answer any [request for discovery,] correspondence from the plaintiffs," or court orders. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1182 (3d Cir. 1984). Here, the central prejudice is the lack of discovery, essentially rendering the plaintiff blind in pursuit of this action. The length and nature of the defendants' delays raise significant concerns. The defendants argue that because they contemplated filing a protective order, which was never in fact filed with the court until the instant motion for reconsideration was submitted, they should be excused for continuously violating the Federal Rules and the court's specific orders. (Doc. No. 80, Att. 1). As the plaintiff correctly points out, the defendants fail to address why no discovery has been completed to this point in a case that is two years and eight months old. The defendants were ordered to respond to outstanding discovery requests before October 9, 2012. (Doc. No. 62). After that deadline passed, the court ordered outstanding discovery to be complete by November

16, 2012. (Doc. No. 67). When that deadline too fell by the wayside, the court ordered the defendant to respond, in writing, to address "the defendants' repeated failures to supply discovery responses, despite multiple court orders directing them to do so." (Doc. No. 69). The defendants ignored that order as well.

Forcing the plaintiffs to continue forward with this case, despite the refusal of the defendant to supply legitimate discovery, would constitute a severe prejudice given the defendants' continual disregard for the court's numerous explicit orders and communications, without proper explanation. Doing so would place the plaintiffs in an untenable position given that the specific accusations about the defendants' conduct have been known since January, 2011. The plaintiff still has no discovery to direct an investigation into the merits of the claimed defenses. The defendants also concede that New Life is now out of business and Defendant Malia has difficultly finding work and maintaining an income. (Doc. No. 82). As company documents were absolutely vital and required discovery, the status of which are presently unknown because of defendants' lack of compliance, the plaintiff finds itself in an unusually prejudicial position. Moreover, the overall delay in this case has severely prejudiced plaintiff's ability to recover damages. The assets of the defunct company are unknown and the personal assets of Defendant Malia are likely shrinking given his now apparent unemployment. (Doc. No.

11

80). Further delay could only hinder the plaintiff's ability to redress damages. For those reasons, the plaintiff would be severely prejudiced if the judgment was vacated.

The third factor deals with who has control of the discovery at issue and who is to blame for the delay. This factor focuses on "whether the defendant was culpable, this is, whether it acted willfully or in bad faith." *Feliciano*, 691 F.2d at 657. "Reckless disregard for the repeated communications from plaintiffs and the court, combined with the failure to investigate the source of a serious injury, can satisfy the culpable conduct standard." *Hritz*, 732 F.2d at 1183. There is no dispute the defendants are in control of the requested discovery, so the court need only evaluate the defendants' actions. It is clear that the defendants, independently and through counsel, have continued to ignore court orders over an extended period of time: failing to have a new attorney appear within 45 days of a court order, (Doc. No. 39, 51, 52), not completing all discovery by October, 2012, (Doc. No. 62), failing to provide ordered discovery by November 16, 2012, (Doc. No. 68), failing to have Defendant Malia appear for an ordered deposition by December 14, 2012, (Id.), not responding to the court's explicit order to address their failure to provide any discovery in this case, (Doc. No. 69), and not responding to plaintiff's properly served motion for sanctions and attorney's fees. (Doc. No. 71).

In response, the defendants point to a "draft" of a motion for a protective order, dated December 10, 2012, as evidence that they were not ignoring the court's orders and were acting in good faith. This motion, allegedly contemplated a mere four days before the previously court ordered, and apparently mutually agreed upon, deposition of Defendant Malia on December 14, 2012, is far from persuasive evidence of a good faith attempt to comply with discovery obligations. In fact, given the timing of the motion, it would tend to show a continued delay tactic meant to avoid complying with the court's specific directives just days before another discovery deadline expired.

Defendants further argue that because Defendant Malia "believes that he does not properly belong in this matter as an individual party because of the protections given him as a corporate officer," they had a good faith basis to ignore the court-ordered deposition. (Doc. No. 80). Judge Caputo previously denied this same argument in addressing the motion to dismiss, sustaining the cause of action for piercing the corporate veil. (Doc. No. 30). Judge Caputo specifically noted that the plaintiff's "amended complaint asserts that Mr. Malia siphons funds from New Life for his own personal use, that he has total control over the decisions of New Life, and that New Life is insolvent." (Doc. No. 40). A party cannot get a second bite at a motion to dismiss by filing a protective order seeking to restrict discovery or because

13

that party believes he should not be in the case.

Even had the defendants filed such a late motion for a protective order it would have been denied. Whether the court should have potentially exercise its discretion under Fed. R. Civ. Pro. Rule 26(c) required the application of a balancing test. *Arnold v. Pennsylvania*, 477 F.3d 105, 108 (3d Cir. 2007). The factors to be considered include:

> (1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

*Id.* These factors clearly support the position that the court would have permitted discovery in regard to Defendant Malia's actions as a corporate officer. The information sought was not of an overly private or personal nature; it relates to how Defendant Malia used corporate funds and was able to pay for his own private expenses. The information clearly was sought to legitimately determine whether Defendant Malia was merely using the corporation as an alter-ego for his personal gain. The nature of the information was not particularly embarrassing given it related to his use of corporate finances for private purposes. The information would benefit the

parties and the court in determining whether the corporate veil would need to be pierced. In fact, such information would be necessary for the court to make a determination if the allegations, combined with the available evidence, support piercing the corporate veil. Defendant Malia was not a public official, but acted as CEO and sole shareholder of a state-registered corporation. Lastly, the abuse of corporate entities is an important public issue because misuse of such business organizations puts all involved parties at risk. In sum, the allegations in the complaint raise serious and specific issues about the misuse of corporate assets. As a result, the court finds the defendants' "drafted" line of argument unpersuasive. The timing of the allegedly considered motion, coupled with defendants' history of dilatoriness, reinforces that this drafted, but never filed, motion was just another reason to avoid and prolong discovery.

A reckless disregard for court orders is not enough, however, to find culpable conduct. *Hritz*, 732 F.2d at 1183. There must be something more, such as when "one party has acted in willful and deliberate disregard of reasonable and necessary court orders and the efficient administration of justice." *DiGregorio v. First Rediscount Corp.*, 506 F.2d 781, 788 (3d Cir. 1974). When this type of culpable conduct occurs, "willfulness is 'mirrored in the record'" when the party attempting to vacate the judgment was the source of the continuous delay and disobedience. *Id.* (citing *Norman v. Young,* 422

F.2d 470, 474 (10th Cir. 1970)). Defendant Malia and his former company, New Life, have been jointly represented throughout these proceedings, first by Attorney Bruce Rosenburg and now by Amori & Associates. (Doc. No. 43). Although Defendant Malia was initially improperly served, the company that he ran as CEO and sole shareholder was properly served on January 24, 2011. Still the defendants allowed a default judgment to be entered against them both on February 18, 2011. (Doc. No. 12, 13). After previous counsel withdrew on October 11, 2011, defendants failed to have new counsel file a timely notice of appearance within the court ordered 45-day time limit. (Doc. No. 43). The defendants ignored three separate discovery orders, (Doc. No. 63, 67, 69), and failed to respond to the motion for sanctions and attorney's fees. (Doc. No. 71). Only after the entry of default judgment have the defendants responded to the plaintiff's communications or the court's orders. Courts should not be required to enter default in order to have parties comply with the Federal Rules and court orders.

Defendant Malia claims that he "did not put his head in the sand doing nothing. Counsel was in the process of preparing a motion for his dismissal from the case to be presented after the discovery issues were resolved." (Doc. No. 80). Defendants do not dispute that they have not responded to <u>any</u> discovery requests and orders. (Doc. No. 68, 80). Defendants have known about the issues in this case since the amended complaint was filed on

January 19, 2011, (Doc. No. 6), and knew specifically of the issues surviving through to the discovery phase on November 19, 2011, when their motion to dismiss was denied. (Doc. No. 40). Rather than mitigate the defendants' culpability, these facts only compound it. The record demonstrates a two-year pattern of willful ignorance and dilatoriness. The record is replete with the defendants' disregard for the court's responsibility to move this case forward. This factor clearly favors the plaintiff.

Turning now to the four factors outlined in *PRIDES,* the court notes that three of those factors, prejudice, reason for delay, and length of delay, have been discussed above. 235 F.3d at 182. The plaintiff will be severely prejudiced by the continuation of this long-delayed litigation. There are no valid reasons cited by the defendants to withhold the discoverable materials and the length of delay is significant. Turning to the final factor, whether the party acted in good faith, defendants argue that their allegedly contemplated, but never filed, motion for a protective order is evidence of a good faith effort to comply with court ordered discovery. Significantly, the defendants knew about the deposition on September 25, 2012, (Doc. No. 62), yet failed to raise any issue in any other manner with the court prior to the ultimate entry of default judgment. (Doc. No. 79). As of September 25, 2012, the issues for discovery were well settled in Judge Caputo's prior ruling on the motion to dismiss. Therefore, the court does not find that the never-filed draft motion for

a protective order was a good faith attempt to resolve an actual discovery dispute. The defendants' argument does not explain why they have failed to provide any discovery as of the October 9, November 16, and December 14, 2012, deadlines. Rather this motion fits into the defendants' well-documented pattern of non-compliance with court directives. Relief under Rule 60(b)(1) is not appropriate.

B. Rule 60(b)(6)

Rule 60(b)(6), upon which the defendants rely in the alternative, "is available only in cases evidencing extraordinary circumstances." *Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir. 1975). Although this relief may be available when an extreme or unexpected hardship will result, "extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices." *Budget Blinds*, 536 F.3d at 255 (citing *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 978 (3d Cir. 1978)). The defendants must make "'a more compelling showing of inequity or hardship' than normally would be required to reopen a case under subsections (1) through (5)," *Landano v. Rafferty*, 897 F.2d 661, 683 (3d Cir. 1990)*,* and such showing must amount to "more than mere neglect, inadvertence, indifference, or careless disregard of circumstances." *Ethan Michael Inc. v. Union Tp.*, 392 F. Appx. 906, 910 (3d Cir. 2010).

Here, the defendants cannot claim that this judgment is an unexpected

18

hardship. Both parties have been part of the litigation since its inception and the damages sought have been known for the same time period. The defendants contend that because "of his very strong argument that he does not belong in this litigation in the first place," the entry of default judgment is "contrary to equity and justice." (Doc. No. 80). Contrary to his belief, it appears that Defendant Malia is a proper party. In fact, there is nothing in the defendants' brief that indicates why the discovery, aside from Defendant Malia's deposition, has not yet been provided in a case that, as of December 14, 2012, was over 22 months old. As such, the default judgment "resulted from the party's deliberate choices" to ignore the court's numerous orders and the Federal Rules of Civil Procedure over an extended period of time. *Budget Blinds*, 536 F.3d at 255. Extraordinary circumstances are not present and vacating the judgment pursuant to Rule 60(b)(6) is inappropriate.

Lastly, the court has also expended significant resources dealing with defendants' delinquency. Any conditions imposed, if judged by history, would be insufficient to ensure defendants' compliance. The court is very aware of the severity of this action. It was not entered into this decision lightly. However, the defendants' action, or better stated inactions, have left the court in a corner from which there appears no other escape. Therefore, justice does not require the reopening of the prior judgment.

### III. CONCLUSION

For the foregoing reasons, the defendants' Motion for Reconsideration of default judgment is **DENIED**. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: October 22, 2013**

O:\Mannion\shared\MEMORANDA - DJ\2011 MEMORANDA\11-0068-02.wpd